# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 08-20153-01-KHV |
| DARRON L. ESKRIDGE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

On November 5, 2008, a grand jury charged Darron L. Eskridge with one count of possessing a firearm after having been convicted of three or more violent felonies, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)(1). On August 27, 2009, a jury found defendant guilty. On December 1, 2009, the Court sentenced defendant to 327 months in prison.[1] Defendant appealed. On April 13, 2011, the Tenth Circuit affirmed his conviction and sentence. See Order And Judgment (Doc. #133). This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #134) filed April 16, 2012. For reasons set forth below, the Court overrules defendant's motion.

## Factual Background

Based on testimony and exhibits received at the hearing on defendant's motion to suppress, the Court summarized the relevant facts as follows:

> On September 23, 2008 at approximately 10:00 a.m., Captain William Howard, Jr. of the Police Department of Kansas City, Kansas ("KCKPD") was driving northbound on Hutton Road in a relatively unpopulated area of Wyandotte

---

[1] The grand jury also charged John T. Roland with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Roland pled guilty. The Court sentenced Roland to 100 months in prison.

County, Kansas. Captain Howard was in full uniform and was driving an unmarked Crown Victoria, a model commonly used as a police cruiser. The cruiser had police lights mounted in the grill and a spotlight mounted on the side.

Hutton Road is a two-lane paved road with a speed limit of 40 miles per hour. As Officer Howard came around a slight bend at the crest of a hill, he observed a black Mercury Mountaineer approximately one-half mile ahead. The Mountaineer had pulled off the roadway in the ditch, facing northbound on the east side of Hutton Road. The vehicle was approximately 30 yards north of a driveway which emptied onto the east side of Hutton Road. Howard has traveled this portion of Hutton Road almost daily for 12 years and he has never seen a vehicle stopped in this location. He initially thought that someone might be urinating on the roadside.

As he got closer to the Mountaineer, Captain Howard saw a man standing outside the car but leaning into the rear passenger compartment and "working feverishly" with his arms. Captain Howard had a "dozen fleeting thoughts" about what might be occurring. For example, he thought that the man might be assaulting someone, restraining someone or perhaps spanking a child in the back seat. Officer Howard tapped on his brakes and slowed as he neared the vehicle. When the man saw Captain Howard looking at him, he stood up straight and looked back at Captain Howard with what Howard described as a "deer in the headlights" look. The man did not flag Captain Howard down or wave at him, which Captain Howard testified would have eased his concern. At that point, Captain Howard decided to stop and investigate the situation. Because of traffic, however, he did not immediately pull over; rather, he decided to turn around at the next intersection. In his rearview mirror, as he drove past the Mountaineer, Captain Howard saw the man walk around the vehicle and get into the driver's seat.

Captain Howard continued northbound on Hutton Road about one quarter of a mile to the nearest intersection, where he turned around and headed south on Hutton Road. After he turned around and headed south, however, he could not see the Mountaineer. As Captain Howard approached the spot where the Mountaineer had been parked, he saw that it had backed into the driveway south of where it had been pulled off the road. The Mountaineer was slowly nosing out of the driveway and the driver appeared indecisive, as if he wanted to turn right (north), but then started to turn left and waited for Captain Howard's car to pass. Captain Howard slowed and stopped his vehicle near the entrance of the driveway and motioned to the driver to go ahead of him. The Mountaineer turned left (southbound) onto Hutton Road. Captain Howard testified that he then activated his emergency lights and stopped the vehicle because he suspected that an assault or something had just occurred and that he needed to investigate.

After he stopped the vehicle, Captain Howard approached the driver's side, looked in and saw the driver (later identified as Eskridge) and a passenger (later

-2-

identified as Roland) in the front. Captain Howard asked Eskridge if anything was wrong and Eskridge replied that he had pulled over to wipe some crumbs out of the back seat. Captain Howard saw electronic equipment under Roland's feet and in the back seat. Captain Howard asked Eskridge where he was going and he replied that he had been at a friend's house on 22nd Street in Kansas City, Kansas and was lost. Captain Howard knew that 22nd Street was nearly ten miles from where he had stopped the Mountaineer.

Captain Howard asked Eskridge for his license, then returned to his patrol car. When Captain Howard ran Eskridge's name through the computer system it showed that Eskridge had prior felony convictions for burglary. He called dispatch for backup and within a short time, two KCKPD police officers arrived. One of them looked in the Mountaineer and reported to Captain Howard that there was a handgun on the driver's side floorboard. At that point the officers handcuffed Eskridge. Eskridge told the officers that it was a pellet gun and that the pellets were in the back seat. Captain Howard asked Eskridge if he could verify that by searching the vehicle and Eskridge consented.

Captain Howard found pellets in the back seat and noticed a large wooden box with the name "Kyle" carved into it. Captain Howard asked Eskridge who "Kyle" was, and Eskridge seemed unfamiliar with the name. Captain Howard found a document in the Mountaineer that identified Kyle McMeans, 4847 N. 93th, Kansas City, Kansas. Captain Howard asked the dispatcher to have an officer check that address, and within a relatively short time, a KCKPD officer advised Captain Howard that he had arrived at the residence and observed signs of forced entry. Not long after that, the homeowners arrived at the residence and determined that someone had taken a number of items from the residence, including electronics and several firearms.

Officers searched the roadside where Captain Howard had first observed the Mountaineer and found personal items from the McMeans' residence, including a purse, documents and identification. A full search of the vehicle revealed all of the stolen items except for some missing firearms. Captain Howard later returned to the driveway area and found a .22 mag Liberty Scout revolver, serial number 550588 and a 12 gauge Jing An shotgun, Model PH 12-1, serial number 9602504, both of which he confirmed to be stolen from the McMeans' residence.

Memorandum And Order (Doc. #37) at 1-4 (footnotes included in text).

As noted, Roland pled guilty to possessing a firearm after having been convicted of a felony. Eskridge proceeded to trial and a jury ultimately found him guilty of possessing a firearm after having been convicted of a felony. The Court sentenced defendant to 327 months in prison.

Defendant appealed. On April 13, 2011, the Tenth Circuit affirmed his conviction and sentence.

James L. Spies represented defendant at trial and on appeal. Liberally construed, defendant's Section 2255 motion alleges that Mr. Spies was ineffective because (1) before trial, he advised defendant not to accept a 15-year plea deal, (2) at trial, he did not call Roland as a witness, (3) at sentencing, he did not challenge the enhancement of his sentence under the Armed Career Criminal Act and (4) on appeal, he did challenge the jury's finding that defendant was in constructive possession of the firearm.

## **Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show (1) that the performance of counsel was deficient and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir.

1988). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

I.   **Advice Not To Accept Plea Deal (Claim 1)**

Defendant argues that counsel was ineffective because before trial, he advised defendant not to accept a 15-year plea deal. In his reply, defendant does not dispute the authenticity of counsel's five detailed letters which he sent to defendant during plea negotiations in May and June of 2009. See Attachments To Affidavit [Of James L. Spies] (Doc. #139-1). These letters indicate that counsel repeatedly advised defendant that he was making a huge mistake going to trial and that he should plead guilty under the proposed plea agreement which included a joint recommendation of 188 months in prison.[2] Even if the Court assumes that counsel advised defendant not to plead guilty, he has not shown that such advice was deficient or prejudicial. Defendant has not alleged specific and particularized facts which, if true, would entitle him to relief. Defendant has maintained his innocence and has not alleged or shown that he would have pled guilty if he had received different advice from his attorney.[3] Accordingly, the Court overrules defendant's first

---

[2]   See id.: Letter of June 18, 2009 (instructing defendant to review plea and explaining joint recommendation of 188 months in prison); Letter of June 16, 2009 (explaining strength of government case and counsel belief he will be convicted and sentenced to significantly more time than under plea agreement; concluding defendant making "huge mistake" going to trial); Letter of June 3, 2009 (defenses "extremely weak," have "very little chance of success;" defendant likely be convicted at trial, making "huge mistake by proceeding to trial;" facing much higher sentencing range by going to trial and losing; advising that trial is "great risk" that not in his best interest; asking him "please give serious consideration to the issues" raised in letter); Letter of May 29, 2009 (best option to plead under conditional plea agreement and appeal order on suppression motion); Letter of May 28, 2009 (same).

[3]   Indeed, one of defendant's claims in his present motion is that counsel was
(continued...)

claim for relief.

## II.     Failure To Call John Roland As A Witness (Claim 2)

Defendant argues that counsel was ineffective because at trial, he did not call co-defendant John Roland as a witness. Defendant assumes that Roland would have exonerated him of any responsibility for the firearm, but the record reflects that Roland likely would have implicated defendant as the one who was primarily responsible for the firearms. At sentencing, Roland's counsel stated as follows:

> Judge, as the Court knows, and you went through a jury trial on this, but Mr. Eskridge was the father of Mr. Roland's sister's children. And that's how he knew him and became involved with him in this particular situation. And while Mr. Roland clearly accepts responsibility for his involvement in this action, *there's no question that Mr. Eskridge was the ring leader of this particular incident*. And I would indicate to the Court that had Mr. Roland chosen to testify against Mr. Eskridge, we probably wouldn't be here today arguing about what type of sentence or what would be a reasonable sentence for Mr. Roland. But based upon his values and the fact that this was the father of his nieces and nephews, so to speak, he just couldn't do it.

Continuation Of Sentencing (Doc. #127) at 87-88 (emphasis added); see also Roland's Plea Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #51) filed June 10, 2009 at 1 ("I was involved in a burglary with another person and two guns were taken out of the house."). Defendant has not submitted an affidavit of Roland's proposed testimony. To show deficient performance and prejudice on a claim that counsel failed to call a witness, a defendant ordinarily must provide an affidavit of the potential witness as to the nature of the proposed testimony. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony

---

³(...continued)
ineffective because on appeal, he did not argue and show that insufficient evidence linked defendant to the firearms. Because defendant continues to insist that he is innocent, he cannot show that counsel's alleged failure to advise him to plead guilty was prejudicial.

of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir.) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice), cert. denied, 493 U.S. 898 (1989); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (to warrant evidentiary hearing, movant must submit affidavit or sworn statement from witness or counsel), cert. denied, 470 U.S. 1058 (1985); United States v. Anderson, No. 95-20086-JWL, 2003 WL 22757928, at *3 (D. Kan. Nov. 6, 2003) (Section 2255 movant required to submit affidavit of putative witness); United States v. Cosby, 983 F. Supp. 1022, 1026 (D. Kan. 1997) (prejudice not established where defendant did not submit affidavit of potential alibi witnesses); see also United States v. Jones, 124 F.3d 218, 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show that co-defendant would have offered exculpatory evidence). Based on the record and absent an affidavit of the proposed testimony, counsel's failure to call Roland as a witness was not deficient or prejudicial.

**III.     Failure To Challenge Armed Career Criminal Enhancement (Claim 3)**

Defendant argues that counsel was ineffective because at sentencing, he did not challenge the enhancement of his sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Ordinarily, the maximum sentence for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is 10 years in prison. See 18 U.S.C. § 924(a)(2). Under the ACCA, if a defendant has three or more prior convictions for a violent felony or serious drug offense, the statutory minimum term in prison increases to 15 years. See 18 U.S.C. 924(e). The ACCA defines a violent felony as a crime punishable by more than one year of imprisonment that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

The ACCA includes "burglary" in its list of enumerated violent felonies, but it does not define the offense. 18 U.S.C. § 924(e)(2)(B)(ii). In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court explained that the ACCA refers to "generic" burglary, which includes "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 598; United States v. Maldonado, 696 F.3d 1095, 1097-98 (10th Cir. 2012). If a state burglary statue is a non-generic statute, the Court must examine other documents to determine whether defendant committed a generic burglary by entering a building or structure. Shepard v. United States, 544 U.S. 13 (2005); Taylor, 495 U.S. at 602. In doing so, the Court is limited "to examining the . . . charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." United States v. Harris, 526 Fed. Appx. 845, 851 n.4 (10th Cir. 2013) (citing Shepard, 544 U.S. at 16).

Here, defendant had five prior convictions for second degree burglary in violation of Missouri law, RSMo. Section 569.170, which states that a person commits the crime of burglary in the second degree "when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Because Missouri law includes movable objects in the definition of an inhabitable structure, the state burglary statute is considered a non-generic statute. RSMo. Section 569.010(2) (term "inhabitable structure" includes "a ship, trailer, sleeping car, airplane, or other vehicle or structure" where people live, conduct business, assemble or stay overnight); see United States v. Ramon Silva, 608 F.3d 663, 665-

66 (10th Cir. 2010) (New Mexico statute, which prohibits burglary of both movable and immovable structures, contains "non-generic" definition of burglary).

Defendant argues that counsel should have objected at sentencing because in determining that his prior convictions qualified as predicate offenses under Section 924(e), the Court did not follow the procedure under Shepard, supra. See Memorandum Of Law In Support Of Movant's Application Under 28 U.S.C. § 2255 (Doc. #135) at 8. Defendant argues that his prior convictions do not qualify under the ACCA because he never actually entered a house or building. See Motion Under 28 U.S.C. § 2255 (Doc. #134) at 6.

Convictions for second-degree burglary under Mo. Rev. Stat. § 569.170 qualify as burglary within the meaning of Section 924(e)(2)(B)(ii) so long as the burglary is of a "building or structure." United States v. Walker, 497 Fed. Appx. 676, 676 (8th Cir. 2013); United States v. Bell, 445 F.3d 1086, 1090-91 (8th Cir. 2006). The Presentence Investigation Report (Doc. #91) ("PSIR") noted that defendant satisfied the requirements for a sentencing enhancement under the ACCA because he had been convicted of six violent felonies under Section 924(e)(2)(B): (1) on February 21, 1997 in Jackson County Circuit Court, Kansas City, Missouri, Case No. CR96-1813 for Exhibiting a Deadly Weapon, (2) on February 21, 1997 in Jackson County Circuit Court, Kansas City, Missouri, Case No. CR96-71584 for Burglary, Second Degree, (3) on March 13, 2003 in Clay County Circuit Court, Liberty, Missouri, Case No. 7CR102004332 for Burglary, Second Degree and Attempted Second Degree Burglary, (4) on July 3, 2003 in Platte County Circuit Court, Platte City, Missouri, Case No. 03CR8226501 for Burglary, Second Degree, (5) on January 19, 2007 in Clay County Circuit Court, Liberty, Missouri, Case No. 06CY-CR01560 for Burglary, Second Degree, and (6) on January 19, 2007 in Clay County Circuit Court, Liberty, Missouri, Case No. 06CY-CR04276 for

Burglary, Second Degree. See PSIR ¶¶ 40, 45, 50-53; 18 U.S.C. § 924(e) (enhanced sentence for those violating § 922(g) and having three prior convictions for "violent felony" or "serious drug offense"); see also U.S.S.G. § 4B1.4.

Defendant has not alleged sufficient facts to establish that counsel's failure to object to the enhancement of his sentence under the ACCA was deficient or prejudicial. Defendant apparently does not dispute that his prior conviction for exhibiting a deadly weapon constitutes a violent felony under Section 924(e). As to his remaining convictions which involve burglary, defendant states "none of Movant's prior convictions envolved [sic] actually entering a house or building." Motion Under 28 U.S.C. § 2255 (Doc. #134) at 6. Defendant has not alleged what type of "structure" was involved in his prior burglaries or that he told counsel about the factual circumstances of the prior convictions. In light of the descriptions in the PSIR of four of defendant's burglary convictions, counsel apparently had no reason to believe that the convictions did not involve burglary of a "building or structure," as required to meet the generic definition of burglary. See PSIR ¶ 45 (in Jackson County Circuit Court, Kansas City, Missouri, Case No. CR96-71584, defendant admitted to stealing car and later burglarizing residence); id. ¶ 50 (in Clay County Circuit Court, Liberty, Missouri, Case No. 7CR102004332, defendant forced entry into residence and kicked open walk-in garage door at another residence); id. ¶ 51 (in Platte County Circuit Court, Platte City, Missouri, Case No. 03CR8226501, defendant charged with unlawfully entering "building;" in plea petition, defendant admitted that he "burglarized a home"); id. ¶ 52 ( in Clay County Circuit Court, Liberty, Missouri, Case No. 06CY-CR01560, defendant admitted that he had entered unlocked residence). But cf. id. ¶ 53 (refers to "inhabitable structure" with no reference to type of structure). Even if the Court assumed (contrary to the facts set forth in the PSIR) that one or more of defendant's prior convictions did not involve burglary of a "building or structure," defendant's prior convictions

-10-

constituted "crimes of violence" under the residual clause of Section 924(e)(2)(B)(ii) for convictions that otherwise involve "conduct that presents a serious potential risk of physical injury to another." United States v. Terrell, 593 F.3d 1084, 1094-95 (9th Cir. 2010) (burglary under Missouri law presents serious potential risk of physical injury despite broad definition in state statute of "structure"); United States v. Cantrell, 530 F.3d 684, 695-96 (8th Cir. 2008) (second-degree burglary under RSMo. 569.170 categorically is "crime of violence" under residual clause of Guidelines' definition despite its broad definition of "inhabitable structure," because of "the risk of a violent confrontation between [the defendant] and the occupant, the police, or another third party"). For these reasons, counsel's failure to ask for an inquiry under Shepard was not deficient or prejudicial. Accordingly, the Court overrules defendant's claim that counsel was ineffective because he did not object to the Court's calculation of a 15-year mandatory minimum prison term under the ACCA.

**IV.     Failure To Object To Jury Finding Of Constructive Possession (Claim 4)**

Defendant argues that counsel was ineffective because on appeal, he did not challenge the jury's finding that defendant was in constructive possession of the firearm. Constructive possession may be established by circumstantial evidence and may be joint among several individuals. United States v. Delgado-Uribe, 363 F.3d 1077, 1084 (10th Cir. 2004); United States v. Carter, 130 F.3d 1432, 1440-41 (10th Cir. 1997). In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession. United States v. Lopez, 372 F.3d 1207, 1212 n.4 (10th Cir. 2004); United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000). Instead, the government must present "direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." Lopez, 372 F.3d at 1212 n.4 (quoting McKissick, 204

F.3d at 1291). Based on the trial testimony, ample circumstantial evidence linked defendant to the firearms.[4] Accordingly, counsel's failure to raise this issue on appeal was not deficient or prejudicial.

## **Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required

---

[4] At trial, the Court instructed the jury as follows:

As to the second element, the law recognizes two kinds of possession: actual possession and constructive possession. A person who has direct physical control over an object or thing, at a given time, has actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over an object or thing, either directly or through another person, is then in constructive possession of it. More than one person can be in possession of an object if each knows of its presence and has the power and intention to control it. A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely being present with others who have possession of the object does not constitute possession. In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the particular defendant and the object.

Instructions To The Jury (Doc. #74) filed August 27, 2009, No. 12 .

-12-

unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

**Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[5] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #134) filed April 16, 2012 be and hereby is **OVERRULED**. A certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

Dated this 12th day of December, 2013, at Kansas City, Kansas.

                                              s/ Kathryn H. Vratil
                                              KATHRYN H. VRATIL
                                              United States District Judge

---

[5] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).